UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

MOZA LLC,

                Plaintiff,

            -against-

TUMI PRODUCE INTERNATIONAL CORP., *et al.*,

                Defendants.

------------------------------------------------------------

17cv1331

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        This action began as a business dispute between two perishable goods wholesalers, Moza LLC ("Moza") and Tumi Produce International Corp. ("Tumi"). Moza seeks to amend its complaint to add two new defendants. For the following reasons, Moza's motion to amend its complaint is granted.

## BACKGROUND

        Over a year ago, Moza brought this action against Tumi and its owners, Catherine and William Bracho (the "Tumi Defendants"), under the Perishable Agricultural Commodities Act ("PACA"). By way of background, PACA provides that "proceeds from the sale of [perishable] commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made." Coosemans Specialties Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007). A PACA trust "is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full." Ger-Nis Int'l, LLC v. FJB, Inc., 2007 WL 656851, at *1 (S.D.N.Y. Mar. 1, 2007). In relevant part, the complaint alleges that between October 4, 2016

and December 22, 2016,[1] Moza made multiple shipments of fruits and vegetables to Tumi. Despite repeated demands, Tumi either failed to pay or made only partial payments. Accordingly, Moza seeks to enforce the trust provisions of PACA and also asserts breach of fiduciary duty and breach of contract claims.

While this action appears straightforward, it has meandered through multiple substitutions of counsel and neglect of deadlines set by the Court. Following several applications to adjourn various deadlines, this Court held a final pre-trial conference on January 18, 2018 only to learn that no discovery had taken place. (Jan. 18, 2018 Hr'g Tr. 5:9-14.) This Court fixed an expedited discovery schedule and directed the parties to appear for trial on February 21, 2018. On the eve of trial, the parties requested another adjournment and reported that they still had not engaged in any discovery. (See ECF No. 39, at 1; Feb. 20, 2018 Hr'g Tr. 2:15-3:10.)

Then, on March 2, 2018—ostensibly while discovery was underway—counsel for Moza filed a letter seeking permission to amend its complaint to add two additional defendants, Ultra Fresh LLC and Michael Felix (the "Ultra Fresh Defendants"). In substance, the proposed amended complaint asserts claims against the Ultra Fresh Defendants based on allegations that (1) Felix was an officer, director, or shareholder of Tumi who controlled all of its business operations, controlled Tumi's PACA trust assets, and conducted Tumi's day-to-day activities; (2) the Tumi Defendants have no assets and have ceased operations; (3) Felix was the president and managing member of Ultra Fresh; (4) Felix and Ultra Fresh assumed control over Tumi's operations or operated in Tumi's name as a purchaser and seller of produce; and (5) Felix and Ultra Fresh assumed Tumi's obligations to pay another one of Tumi's PACA creditors. (See

---

[1] Moza's proposed amended complaint erroneously alleges that the transactions occurred between October 4, 2017 and December 22, 2017.

Notice of Motion for Leave to File Amended Complaint, ECF No. 46, Ex. A ("Proposed Amended Compl.") ¶¶ 15-17, 22-23, 32, 35, 37.)

DISCUSSION

I.  Legal Standard

Rule 15 of the Federal Rules of Civil Procedure prescribes a liberal standard for granting leave to amend, exhorting courts to "freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018) (citation and quotation mark omitted). It is well settled that a court may deny leave to amend if, for example, the amendment would be futile, if the movant acted with undue delay, bad faith, or a dilatory motive, or if granting leave would result in prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962).

Moreover, because Moza's motion to amend seeks to join additional defendants, Rule 21, which authorizes a court to add a party at any time "on just terms," must also be satisfied. See Fed. R. Civ. P. 21. Nevertheless, courts in this Circuit have recognized that the requisite showing is the same under Rule 15 and Rule 21, both of which invoke the exercise of discretion in the interests of justice. See, e.g., Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010).

II.  Analysis

As a threshold matter, the Tumi Defendants do not oppose Moza's motion despite having sought an extension of time to file an opposition. In such circumstances, some courts in this Circuit have granted motions to amend solely on that basis without further analysis. E.g.,

Warshun v. N.Y. Cmty. Bancorp, Inc., 957 F. Supp. 2d 259, 264-65 (E.D.N.Y. 2013); Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 2007 WL 2734265, at *1 (S.D.N.Y. Sept. 17, 2007). But it is appropriate to address some of the pertinent factors based on this case's circuitous procedural history and the Ultra Fresh Defendants' willingness to oppose the motion.[2]

    A. Futility

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)," the standard for which is well-settled. Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002); see Anderson News, LLC v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (instructing that the "adequacy of a proposed amended complaint to state a claim is to be judged by the same standard as those governing the adequacy of a filed pleading"). An amendment may also be futile "if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000).

        1. Adequacy of Pleading

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In resolving a motion under Rule 12(b)(6), a court accepts a plaintiff's allegations

---

[2] During the pendency of briefing, counsel for the Ultra Fresh Defendants sought an extension of the briefing schedule to file opposition papers. (See ECF No. 54.) This Court denied the application because the Ultra Fresh Defendants were not parties to this action and thus, had no standing to contest the motion to amend. See Copantitla v. Fiskardo Estiatorio, Inc., 2010 WL 1327921, at *4 (S.D.N.Y. Apr. 5, 2010) (remarking that the standing of a non-party to contest a motion to amend "is, at best, dubious") (quotation marks and citation omitted); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007) (same).

4

as true and draws all reasonable inferences in its favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014) (quotation mark omitted).

In considering whether an amended complaint states a claim, a court considers "the proposed amendment[s] . . . along with the remainder of the complaint." Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 225 (2d Cir. 2017). Thus, while Moza submits several declarations and exhibits in support of its motion to amend, this Court declines to consider such extraneous materials in evaluating futility. See Cano v. DPNY, Inc., 287 F.R.D. 251, 258 (explaining that "[b]ecause determination of futility is subject to the same standards as a [Rule 12(b)(6) motion], '[f]utility is generally adjudicated without resort to any outside evidence'" (second alteration in original)).

Here, the proposed amended complaint adequately states claims under PACA against Felix. An "individual who is in a position to control the assets of the PACA trust and fails to preserve them[] may be held personally liable to the trust beneficiaries for breach of fiduciary duty." Coosemans Specialties, Inc., 485 F.3d at 706. Although some courts have found "conclusory and undetailed allegations of control by individuals over PACA trust assets . . . insufficient to plausibly suggest personal liability" in PACA cases "involving multiple officers or shareholders," Hop Hing Prods. Inc. v. X & L Supermarket, Inc., 2013 WL 1232948, at *10 (E.D.N.Y. Mar. 26, 2013) (collecting cases), this case is not one of them. Specifically, the proposed complaint sufficiently details Felix's role as the individual who controlled Tumi's daily operations and who exclusively interfaced with Moza with respect to purchases, payments, shipping, and deliveries. (Proposed Amended Compl. ¶¶ 22-23.) Accordingly, futility is not a

5

bar to amending the complaint to add Felix as a defendant.

This Court reaches the same conclusion with respect to Ultra Fresh. Construing all inferences in favor of Moza, the proposed amended complaint appears to premise Ultra Fresh's liability on successor liability. (Proposed Amended Compl. ¶¶ 32, 37-38, 57-59.) Such a theory raises two antecedent issues, neither of which have been addressed by the Second Circuit. First, it presupposes—as some courts in this Circuit have recognized—that successor liability applies in the PACA context. Accord Hop Hing Prods. Inc., 2013 WL 1232948, at *10 (observing that the "scant discussion" regarding successor liability in the PACA context "confirms that, if established, successor liability may impose PACA liability on a successor to a PACA debtor"). Thus, this Court assumes, without deciding, that a corporate successor may be liable for its predecessor's PACA liability. Second, even if successor liability applies to PACA cases, the question arises: what law supplies the rule of decision? Because PACA's trust provisions do not explicitly provide for successor liability, see 7 U.S.C. § 499e, federal law governs successor liability, New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 206 (2d Cir. 2006) (citation omitted). But whether state law or a nationwide rule derived from common-law principles fleshes out federal law turns on the three-pronged test articulated in United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979), which concerned "whether the relevant federal interest warrants displacement of state law." See Nat'l Serv. Indus., Inc., 460 F.3d at 207 (citation omitted). In the absence of any briefing by the parties on this inquiry, however, this Court declines to decide whether PACA requires the displacement of state law, especially where its conclusion remains the same under New York law or traditional common law.

Generally, a corporation that acquires the assets of another is not liable for its predecessor's debts. See Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 702 (2d

Cir. 2009). Both under New York law and at common law, this general rule against successor liability is subject to four exceptions when "(1) [the successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser [i.e., a de facto merger], (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." Nat'l Serv. Indus., Inc., 460 F.3d at 207 (citations and quotation marks omitted). Thus, to plead a claim based on successor liability, Moza "must allege enough facts for the Court to infer that one of the exceptions" applies. Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015).

Here, while the proposed amended complaint equivocates in pleading successor liability, this Court finds that it adequately alleges Ultra Fresh's successor liability at minimum under the mere continuation and de facto merger exceptions, which "are so similar that some courts consider them as a single exception." Time Warner Cable, Inc. v. Networks Grp., LLC, 2010 WL 3563111, at *6 (S.D.N.Y. Sept. 9, 2010) (citing Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 15 n.3 (2d Cir. 2003)). In analyzing whether a de facto merger or mere continuation of the predecessor's business has occurred, courts consider "continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management personnel, physical location, assets, and general business operation." Nettis v. Levitt, 241 F.3d 186, 193-94 (2d Cir. 2001) (per curiam), overruled on other grounds by Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006). Moreover, aside from continuity of ownership—the sine qua non of a merger—not all hallmarks of a de facto merger need be shown. Time Warner Cable, Inc., 2010 WL 3563111, at *6.

7

The proposed amended complaint alleges Felix's ownership in and management of both entities. (Proposed Amended Compl. ¶¶ 15, 17, 21-23, 50.) It also avers that Tumi ceased its business operations and no longer possesses any assets. (Proposed Amended Compl. ¶¶ 16, 36.) Moreover, the complaint pleads that Ultra Fresh controlled and assumed Tumi's business operations, inventories, and PACA assets and proceeds to escape liability to Moza. (Proposed Amended Compl. ¶¶ 32, 37, 57.) At this stage, these averments suffice in substance to plausibly allege that "it was the intent of [Ultra Fresh] to absorb and continue the operation of [Tumi]." Nettis, 241 F.3d at 194; accord Nat'l Serv. Indus., Inc., 460 F.3d at 211 n.3.

2. Statute of Limitations

Although PACA vests federal courts with jurisdiction to entertain actions by trust beneficiaries to enforce payment from the trust, it is silent on the limitations period in which such an action must be brought. See 7 U.S.C. § 499e(c); see also Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005). Because PACA does not prescribe a limitations period for claims brought in federal court to enforce its trust provisions, this Court borrows the most analogous limitations period under state law. See Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007).

Federal courts that have addressed this question have uniformly analogized PACA trust claims to breach of fiduciary duty claims. See Weis-Buy Servs., 411 F.3d at 422; see also Spada Props., Inc. v. Unified Grocers, Inc., 38 F. Supp. 3d 1223, 1236 (D. Or. 2014); Flavor-Pic Tomato Co., Inc. v. Gambino, 2016 WL 1268359, at *4 (E.D. La. Mar. 31, 2016); Flores v. Hagobian, 2008 WL 4184118, at *8 (E.D. Cal. Sept. 10, 2008). In New York, the statute of limitations for a breach of fiduciary duty claim depends on two variables: (1) the type of relief sought; and (2) whether fraud is alleged. First, claims that seek solely equitable relief are

8

governed by a six-year limitations period, while those seeking purely monetary relief are governed by a three-year limitations period. IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 272 (N.Y. 2009). Second, if an allegation of fraud "is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations." IDT Corp., 907 N.E.2d at 272 (citing Kaufman v. Cohen, 760 N.Y.S.2d 157 (N.Y. App. Div. 2003)).

Here, while the proposed amended complaint seeks an injunction to segregate and enjoin further dissipation of PACA trust assets, such equitable relief is largely incidental to the monetary judgment that Moza principally seeks. Accord IDT Corp., 907 N.E.2d at 272 (analyzing the nature of the remedy by "looking to the reality, rather than the form, of [the] action"). Moreover, although the proposed amended complaint includes stray allegations that Felix and Ultra Fresh assumed Tumi's liabilities in a fraudulent effort to escape liability to Moza, such allegations refer to the purported intent or purpose behind Felix and Ultra Fresh's actions, and do not recast the PACA claims into essentially fraud claims. Accordingly, this Court concludes that a three-year statute of limitations applies.

Although the limitations period is borrowed from state law, "the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues." Guilbert, 480 F.3d at 149. In Weis-Buy Services, the Third Circuit concluded that claims to enforce PACA trust obligations or preserve the trust res—in contrast to garden-variety breach of fiduciary duty claims against a trustee for damages—accrue when the PACA beneficiary receives notice of the PACA trustee's breach of its fiduciary duties. Weis-Buy Servs., 411 F.3d at 422-23; cf. Guilbert, 480 F.3d at 149 (noting that "[a] federal court generally employs the 'discovery rule,' under which 'a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the

9

litigation"). Thus, in the PACA context, the claim accrues once the produce buyer and its officers fail to timely pay the produce seller for the goods received.

This Court concludes that the proposed claims against the Ultra Fresh Defendants would not be untimely. The invoices are dated between October 4, 2016 and December 22, 2016. Whether a three-year or six-year limitations period is applied, any claims to enforce payment of Moza's PACA trust or to preserve trust assets are undoubtedly timely.

### B. Undue Delay and Prejudice

In this Circuit, "[m]ere delay" does not support denial of leave to amend absent a showing of bad faith or undue prejudice. Pasternack v. Shrader, 863 F.3d 162, 174 (2d Cir. 2017). A court has discretion, however, "to deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice' other parties." Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (citations omitted). Prejudice may result from granting leave to amend if it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). The expenditure of "time, effort[,] and money . . . in litigating [the] matter, without more," does not constitute prejudice "sufficient to warrant denial of leave to amend." Pasternack, 863 F.3d at 174 (quotation mark and citation omitted) (second alteration in original).

To be sure, the analysis in this case is complicated by the fact that both sides either knew or should have known at the outset that Felix would be the linchpin of this case. The knowledge of Felix's primacy by the Tumi Defendants, for example, superficially cuts against a finding of prejudice. Indeed, Moza argues that Felix and Ultra Fresh could not be surprised by

10

the amendments because Felix would have been the central witness for the Tumi Defendants in any event. Moreover, Moza contends that the proposed amendments work no prejudice on the Tumi Defendants because the relevant facts, necessary discovery, applicable law, and trial preparation would be the same. Strictly speaking, any additional litigation resources that must be expended with respect to Ultra Fresh's potential successor liability theory do not appear significant, particularly because Felix—who Moza claims will be deposed anyway—is allegedly the sole member of Ultra Fresh. And given the fact that the parties have not conducted any discovery, any additional delay would likely be minimal.[3]

On the other hand, this Court also weighs Moza's knowledge of Felix's involvement and failure to justify its delay in moving to amend. Courts in this Circuit routinely recognize that a court "may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." N.H. Ins. Co. v. Total Tool Supply, Inc., 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (citation omitted); see also, e.g., Priestley v. Am. Airlines, Inc., 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991); Coggins v. Cty. of Nassau, 254 F. Supp. 3d 500, 508 (E.D.N.Y. 2017). Nonetheless, courts that have denied leave to amend based on a plaintiff's unexplained failure to seek leave to amend based on previously known facts have typically done so in conjunction with a finding of prejudice to the non-movant. See Priestley, 1991 WL 64459, at *3; Coggins, 254 F. Supp. 3d at 509; accord Grace, 228 F.3d at 53-54 (reiterating that a court may deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the

---

[3] However, this Court would be remiss if it did not reiterate that these case-specific circumstances weighing against finding prejudice are attributable to the parties' apparent inability or unwillingness to engage in discovery or otherwise prepare this case for trial.

11

amendment would prejudice other parties" (emphasis added).

Here, the declarations by Moza's principal and its counsel attest that Moza's dealings with Tumi had been arranged by Felix, that Moza had understood Felix to be the sole owner or officer of Tumi, and that the invoices rendered by Moza to Tumi were issued to both Tumi and Felix. (See Declaration of David M. Martin in Further Support of Motion for Leave to File Amended Complaint, ECF No. 57, ¶¶ 6-10; see also Declaration of David H. Relkin in Support of Motion for Leave to File Amended Complaint, ECF No. 49, ¶¶ 4, 19.) Likewise, Moza's moving papers reveal that Tumi's insolvency and cessation of operations occurred in late 2016. (Relkin Decl. ¶ 14.) And despite Moza's knowledge of Felix's central role and Moza's ability to have ascertained Ultra Fresh's involvement before filing this action, Moza never sought to name them as defendants or offer any explanation for failing to do so. But while Moza's prior counsel's actions evince a regrettable dereliction of her duties as counsel, the lack of prejudice—albeit caused by Moza's own refusal to engage in discovery—does not warrant denial of Moza's motion. Accord Dilworth v. Goldberg, 914 F. Supp. 2d 433, 461 (S.D.N.Y. 2012) (holding that "motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge" because defendants "ha[d] not shown any prejudice at all").

CONCLUSION

For the foregoing reasons, Moza's motion for leave to amend is granted. The Clerk of Court is directed to terminate the motion pending at ECF No. 46. The authorization of an amended complaint in no way condones the way in which this case has been litigated, and this Court will not tolerate any further delays in this action.

(1) Moza shall file an amended complaint consistent with this Opinion & Order and serve it on Felix and Ultra Fresh by May 25, 2018;

(2) Felix and Ultra Fresh shall respond to the amended complaint in accord with Fed. R. Civ. P. 12(a);

(3) The parties shall complete discovery and file a joint pre-trial order by July 27, 2018; and

(4) The parties shall appear for a final pre-trial conference on August 1, 2018 at 10:00 a.m.

Dated: May 14, 2018
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.